TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00279-CR







Howard Kenneth Dermody, II AKA Bear, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 51,812, HONORABLE JOE CARROLL, JUDGE PRESIDING







A jury found appellant Howard Kenneth Dermody, II, guilty of capital murder. See
Tex. Pen. Code Ann. § 19.03(a)(2) (West 1994). Because the State did not seek the death penalty,
the court assessed punishment at imprisonment for life. See id. § 12.31(a); Tex. Code Crim. Proc.
Ann. art. 37.071, § 1 (West Supp. 2002). Appellant contends the district court erred by admitting
evidence of extraneous offenses and confidential marital communications, by refusing to instruct the
jury that a witness was an accomplice as a matter of law, and by permitting improper jury argument
by the prosecutor. We will overrule these contentions and affirm the conviction.

Jacob Henry and Aaron Reynolds gave appellant $400 to purchase cocaine, which
appellant was supposed to resell for a profit. Henry and Reynolds were to receive $1000 from the
proceeds, while appellant was to keep the rest for himself. Appellant and his girlfriend, Terra Rice,
took the $400 to Corpus Christi, where they purchased cocaine. Appellant and Rice then used or
gave away the cocaine, leaving no money to pay Henry and Reynolds. When the men demanded the
return of their money, appellant decided to kill them.

Appellant planned the murders with Triston Hernandez and brothers Joe and Lupe
DeLaRosa. Hernandez invited Henry and Reynolds to the DeLaRosas' house, ostensibly to discuss
another possible drug deal. When Henry and Reynolds arrived, they were taken individually to a
bedroom where appellant and Lupe DeLaRosa robbed them and then bludgeoned them to death with
a hammer. In this cause, appellant was convicted for the capital murder of Jacob Henry. He was
separately tried and convicted for the capital murder of Aaron Reynolds. (1) 

Appellant objected to the testimony regarding the cocaine transaction on extraneous
offense grounds. See Tex. R. Evid. 404(b). The objection was overruled, but the court instructed
the jury to consider this evidence only as it reflected on appellant's motive and the relationship
between appellant and the deceased. See Tex. Code Crim. Proc. Ann. art. 38.36 (West Supp. 2002). 
In his first issue, appellant argues that his objection was erroneously overruled. (2)

While evidence of other crimes committed by the defendant are inadmissible solely
to prove his bad character, such evidence may be admissible for other purposes. Tex. R. Evid.
404(b). Proof of motive is one such permissible purpose. Id. In this case, the failed drug deal
explained the hard feelings between appellant and the victims that gave rise to the murder scheme. 
See Wyatt v. State, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000) (evidence of defendant's sexual assault
of victim was admissible to show motive for murder). Crimes are not committed in a vacuum, and
the jury is entitled to know all the relevant facts and circumstances surrounding the charged offense. 
Moreno v. State, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986). The district court could reasonably
conclude that it was impossible for the jury to fully understand the murder without knowing of the
failed drug transaction out of which it arose. See Barber v. State, 989 S.W.2d 822, 831-32 (Tex.
App.--Fort Worth 1999, pet. ref'd) (applying same transaction contextual evidence rule). No error
is shown by issue one.

In issue four, appellant urges that the district court erred by overruling his objection
to Terra Rice's testimony regarding confidential spousal communications between herself and
appellant. Tex. R. Evid. 504(a). Appellant does not refer us to any particular testimony, but simply
complains of "communications that expressed animus on the part of Appellant towards the alleged
victim of this offense or to communications that referred to plans to commit a crime." With regard
to the latter, there is no privilege. Id. 504(a)(4)(A).

The existence of the confidential communication privilege depends on a finding of
a marital relationship. It was undisputed that there was no ceremonial marriage between appellant
and Rice. At a hearing outside the jury's presence, appellant sought to prove they were married by
common law. It was appellant's burden to prove by a preponderance of the evidence that (1) he and
Rice had an express or implied agreement to become husband and wife, (2) they cohabited in Texas
pursuant to that agreement, and (3) they represented to the general public that they were married. 
Tomkins v. State, 774 S.W.2d 195, 208 (Tex. Crim. App. 1987).

Rice testified that she and appellant lived together for one-and-one-half years. 
Neither she nor appellant told anyone that they were husband and wife. She said she used the name
"Terra Dermody" in letters to appellant following his arrest after he told her "that if we were married
I wouldn't have to testify against him, and I was scared and I just agreed with him." She testified
that she had once wanted to marry appellant, but he resisted the idea until after he was in jail. There
was also evidence that Triston Hernandez heard appellant refer to Rice as his "old lady," which
Hernandez took to mean "[m]arried, going out."

The trial court is afforded broad discretion in determining the admissibility of
evidence or the existence of a privilege, and its ruling will not be reversed absent an abuse of
discretion. Colburn v. State, 966 S.W.2d 511, 514 (Tex. Crim. App. 1998); Welch v. State, 908
S.W.2d 258, 264 (Tex. App.--El Paso1995, no pet.). On this record, the district court did not abuse
its discretion by finding no marital relationship between appellant and Rice. Hence, there was no
error in overruling appellant's assertion of the confidential communication privilege. Issue four is
without merit.

Appellant asked the district court to instruct the jury that Rice was an accomplice
witness as a matter of law. See Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979) (accomplice
witness rule). The court refused to do so. Instead, the court submitted the issue of Rice's status as
an accomplice to the jury as a fact question. The court's denial of the requested instruction is the
subject of issue three.

A person is an accomplice if she participates before, during, or after the commission
of a crime and can be prosecuted for the same offense as the defendant or a lesser-included offense. 
Medina v. State, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999). But see Worthen v. State, 59 S.W.3d
817, 820 (Tex. App.--Austin 2001, no pet.) (witness whose only participation occurred after
commission of crime is not an accomplice witness). The witness's participation must involve an
affirmative act or omission to promote the commission of the offense. McFarland v. State, 928
S.W.2d 482, 514 (Tex. Crim. App. 1996). Mere presence at the scene of the crime is not enough to
make one an accomplice witness. Solomon v. State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). 
A witness is not an accomplice because she knew about the crime and failed to disclose it, or even
acted to conceal it. Medina, 7 S.W.3d at 641.

The evidence shows that Rice was aware of the cocaine deal involving appellant,
Henry, and Reynolds, and that she went to Corpus Christi with appellant to purchase the cocaine
with the victims' money. She later used some of the cocaine and knew that appellant gave the rest
away without collecting any money. She knew that appellant's failure to repay Henry and Reynolds
had led to hard feelings. Rice heard appellant and Lupe DeLaRosa discuss killing Henry and
Reynolds, but she did not believe that they were serious. On the day of the murders, she was with
Hernandez when he told Reynolds to come to the DeLaRosas' house. She was also present when
appellant got the plastic sheeting that he later used to wrap the bodies. She was at the DeLaRosas'
house when Henry and Reynolds arrived, but she left soon thereafter. She returned later after
appellant called her, and she saw Reynolds's body in the bedroom. (3) She then drove Joe DeLaRosa
to her mother's house, where they waited for the arrival of appellant, Hernandez, and Lupe
DeLaRosa, who were disposing of Reynolds's body. Later, she helped appellant abandon Reynolds's
car.

Rice's complicity with appellant in the earlier drug deal did not make her an
accomplice to the capital murders. See Kunkle v. State, 771 S.W.2d 435, 439 (Tex. Crim. App.
1986). Under the authorities previously discussed, Rice's knowledge of the scheme to kill Henry
and Reynolds, her failure to disclose the scheme, and her actions following the murders did not,
considered separately or together, make Rice an accomplice to the murders as a matter of law. Rice
was convicted of tampering with physical evidence, but this was not a lesser-included offense of the
capital murders and the conviction was based on Rice's actions following the murders.

When, as here, it is not clear from the evidence that a witness was an accomplice to
the crime, it was sufficient for the court to submit the question to the jury as a fact issue. Worthen,
59 S.W.3d at 821. The court did not err by refusing to instruct the jury that Rice was an accomplice
as a matter of law. Issue three is without merit.

Finally, appellant complains of three instances of allegedly improper jury argument. 
The first instance occurred after the prosecutor reminded the jury of the medical examiner's
testimony regarding the absence of defensive wounds on Henry's body. When the prosecutor began
to explain to the jury what defensive wounds are, appellant objected that this was outside the record. 
The objection was sustained and the jury was instructed to disregard; appellant's mistrial motion was
overruled. The prosecutor went on to discuss, without further objection, the evidence that Henry had
been forced to kneel at gunpoint before appellant hit him in the back of the head with the hammer,
and thus had been unable to defend himself.

A mistrial is appropriate when error has occurred that is so prejudicial that continuing
the trial would be wasteful and futile. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). 
In most cases of improper jury argument, an instruction to disregard will cure any error committed. 
Shannon v. State, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996). Any error in the prosecutor's
reference to defensive wounds was cured by the court's instruction.

Next, appellant complains of the prosecutor's statement that "I've been doing this a
long time and . . . I don't believe I have ever . . . proven to a Defense attorney beyond a reasonable
doubt that anybody that they represent is guilty." Appellant objected that the prosecutor was striking
at appellant over the shoulders of defense counsel. The objection was overruled.

It is improper for a prosecutor to accuse defense counsel of unethical conduct. See
Wilson v. State, 938 S.W.2d 57, 58 (Tex. Crim. App. 1996) (defense counsel "wishes . . . that you
turn a guilty man free" because "he doesn't have the obligation to see that justice is done"); Fuentes
v. State, 664 S.W.2d 333, 335-38 (Tex. Crim. App. 1984) (repeated allegations of unethical conduct
by defense counsel); Anderson v. State, 525 S.W.2d 20, 21-22 (Tex. Crim. App. 1975) (defense
counsel accused of lying to jury). On the other hand, an argument that might appear to be directed
at defense counsel may in fact strike only at his argument. See Coble v. State, 871 S.W.2d 192, 204-05 (Tex. Crim. App. 1993) (prosecutor responded to defense counsel's argument by saying if neither
law nor facts are on your side, "you argue something ridiculous"; no error to overrule objection that
prosecutor was striking at counsel); Howard v. State, 896 S.W.2d 401, 404-05 (Tex. App.--Amarillo
1995, pet. ref'd) (analogizing defense tactic to "bunny trail" and saying defense counsel raised "false
issues" was attack on argument, not counsel). 

During their jury arguments in this cause, defense counsel stressed the absence of
physical evidence linking appellant to the murders and asserted that the State had failed to prove
either of the felonies underlying the capital murder allegations. Anticipating that he would be
accused by the prosecutor of "nit-picking," one of appellant's attorneys argued that "when you truly
apply the definition of beyond a reasonable doubt, when you follow your oaths as jurors, those things
matter." The prosecutor's reply, that defense attorneys never believe their clients are guilty, did not
accuse counsel of unethical conduct. Instead, the prosecutor attacked counsel's argument by
reminding the jury that a defense attorney's role is to be a vigorous advocate for his client. The court
did not reversibly err by overruling the objection.

Appellant's remaining complaint is directed to the prosecutor's reference to bullets
found during a search of appellant's residence by the police. Responding to defense counsel's
argument that there was no physical evidence linking appellant to the murders, the prosecutor argued
that the bullets found by the police were the bullets Rice said were taken by appellant from
Reynolds's car on the day of the murders. Appellant objected that there was "absolutely no evidence
to show those are the same bullets" and that the prosecutor was "misstating the evidence." The
objection was sustained and the jury was instructed to disregard, but a motion for mistrial was
overruled.

Rice testified that the bullets in question looked like the bullets appellant had taken. 
Thus, there was evidentiary support for the prosecutor's argument and no basis for a mistrial. 
Appellant's second issue does not present reversible error.

The indictment in this cause contained two counts alleging capital murder in the
course of robbery and capital murder in the course of kidnapping. Both counts were submitted to
the jury and guilty verdicts were returned on both counts. The judgment of conviction recites that
appellant was convicted on both counts. While there was no objection, appellant cannot be
convicted twice for the same offense. See Tex. Const. art. I, § 14; Tex. Code Crim. Proc. Ann. art.
1.10 (West 1977). The judgment is modified to reflect appellant's conviction only for capital murder
while committing or attempting to commit robbery as alleged in count one of the indictment; the
conviction on count two is deleted. As modified, the judgment of conviction is affirmed.



 __________________________________________

 David Puryear, Justice

Before Chief Justice Aboussie, Justices Patterson and Puryear

Modified and, as Modified, Affirmed

Filed: October 17, 2002

Do Not Publish
1. That conviction was affirmed in Dermody v. State, No. 03-02-00077-CR, 2002 Tex. App.
LEXIS 6639 (Tex. App.--Austin Sept. 12, 2002, no pet. h.) (not designated for publication). 
2. Appellant also refers us to the overruling of his objection to evidence concerning his use of
Reynolds's car after the murders, but his brief contains no argument that this ruling was erroneous.
3. Henry's body had already been removed.